UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC,<br><br>    Plaintiff(s),<br><br>    v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant(s). | Case No. 2:19-CV-1534 JCM (DJA)<br><br>ORDER |

Presently before this court is plaintiff SFR Investments Pool 1, LLC's ("SFR") motion to dismiss defendant Bank of America, N.A.'s ("BANA") counterclaims and affirmative defenses. (ECF No. 70).  BANA responded (ECF No. 71), and SFR replied (ECF No. 72).

Also before this court is BANA's motion for summary judgment.  (ECF No. 73).  SFR responded (ECF Nos. 76; 78), and BANA replied (ECF No. 81).

Also before this court is SFR's motion for summary judgment.  (ECF No. 74).  BANA responded (ECF No. 75), and SFR replied (ECF No. 80).

Also before this court is BANA's motion to strike SFR's responses (ECF Nos. 76; 78) to its motion for summary judgment.  (ECF No. 79).  SFR responded (ECF No. 83), and BANA replied (ECF No. 84).[1]

## I.     BACKGROUND

This case involves a dispute over real property located at 9168 Badby Avenue, Las Vegas, Nevada 89148 (the "property").  On May 5, 2006, Linton A.K. Gamiao, Lindsey D. Gamiao, and Blossom S.F. Gamiao (collectively "the Gamiaos") obtained a loan to purchase the

---

[1] The parties also submitted supplemental briefing for their motions on the issue of timeliness. (ECF Nos. 92; 93; 94; 97).

**James C. Mahan**
**U.S. District Judge**

property, which was secured by a deed of trust identifying Republic Mortgage LLC as the beneficiary. (ECF No. 1). On October 12, 2011, Republic Mortgage assigned its interest in the deed of trust to BANA. (*See* ECF No. 74 at 2).

On May 25, 2012, Independence Homeowners Association ("the HOA") recorded a notice of claim of delinquent assessment lien regarding the property after the Gamiaos became delinquent on association dues. (*See id.*). On May 14, 2014, SFR purchased the property by successfully bidding at a publicly-held foreclosure auction ("foreclosure sale"). On May 23, 2014, the resulting foreclosure deed was recorded in the official records of the Clark County recorder. On September 3, 2019, SFR filed the underlying complaint, alleging one cause of action: quiet title/declaratory relief pursuant to Nevada Revised Statute ("NRS") 40.10. (ECF No. 1).

On June 11, 2020, this court granted BANA's motion for summary judgment on SFR's claims (ECF No. 17), on the basis of timeliness. (ECF No. 36). SFR's motion for summary judgment (ECF No. 13), and BANA's motion to dismiss (ECF No. 9), were denied accordingly. Then, on February 1, 2021, this court granted SFR's motion to reconsider (ECF No. 38), and denied all three motions. (*See* ECF No. 50).

SFR now moves to dismiss BANA's counterclaims and affirmative defenses as untimely. (ECF No. 70). The parties also cross-move for summary judgment (ECF Nos. 73; 74), and BANA moves to strike SFR's responses to its motion for summary judgment as untimely (ECF No. 79).

## II.   LEGAL STANDARD

### A.   Motion to dismiss

Federal Rule of Civil Procedure 8 requires every pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. Although Rule 8 does not require detailed factual allegations, it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a pleading must have *plausible* factual allegations that cover "all the material elements necessary to sustain recovery under *some*

**James C. Mahan**
**U.S. District Judge**

viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's legal sufficiency on a Rule 12(b)(6) motion to dismiss. First, this court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. Legal conclusions are not entitled to this assumption of truth. *Id.* Second, this court must consider whether the well-pleaded factual allegations state a plausible claim for relief. *Id.* at 679. A claim is facially plausible when this court can draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. When the allegations have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

B. Summary Judgment

Summary judgment is proper when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[2] FED. R. CIV. P. 56(a). The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid unnecessary trials on undisputed facts. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proof on a claim or defense, the moving party must "either produce evidence negating an essential

---

[2] Information contained in an inadmissible form may still be considered on summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**James C. Mahan**
**U.S. District Judge**

- 3 -

element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the party opposing summary judgment to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a fact is "material" if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The opposing party does not have to conclusively establish an issue of material fact in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). But it must go beyond the pleadings and designate "specific facts" in the evidentiary record that show "there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. In other words, the opposing party must show that a judge or jury is required to resolve the parties' differing versions of the truth. *T.W. Elec. Serv.*, 809 F.2d at 630.

This court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). This court's role is not to weigh the evidence but to determine whether a genuine dispute exists for trial. *Anderson*, 477 U.S. at 249. Cross-motions for summary judgment must each be considered on their own merits. *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### III.    DISCUSSION

As an initial matter, this court takes judicial notice of all BANA's requested exhibits. (*See* ECF No. 73 at 13).[3] The documents can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201; *see Khoja v. Orexigen*

---

[3] The briefs filed on behalf of K.G.D.O. Holding Company, Inc., d/b/a Terra West Property Management are noticed on a limited basis and do not serve as evidence that they affected Asset Management Service's ("AMS") actions or policies.

*Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Additionally, this court denies BANA's motion to strike (ECF No. 79) because this court determines summary judgment in light of all relevant information, and SFR's mistake was harmless.

Consistent with this order, this court grants BANA's motion for summary judgment (ECF No. 73) upon the findings that BANA's counterclaims and affirmative defenses are timely and that tender was futile. This court denies SFR's motion to dismiss (ECF No. 70) and motion for summary judgment (ECF No. 74) on the same grounds.

A. <u>SFR's motion to dismiss is denied because the statute of limitations on BANA's counterclaims and affirmative defenses did not begin running until SFR filed this adverse action against BANA</u>

SFR argues that BANA's counterclaims and affirmative defenses should be dismissed as untimely because BANA asserted those claims and defenses after the relevant statutes of limitations had run. (*See* ECF No. 70). This court disagrees.

In *U.S. Bank, N.A. v. Thunder Properties, Inc.*, 503 P.3d 299 (2022) (hereinafter *Thunder Properties*), the Supreme Court of Nevada considered the following questions as certified by the Ninth Circuit:

> (1) When a lienholder whose lien arises from a mortgage for the purchase of a property brings a claim seeking a declaratory judgment that the lien was not extinguished by a subsequent foreclosure sale of the property, is that claim exempt from statute[s] of limitations under *City of Fernley v. [State,] Department of Taxation*, 132 Nev. 32, 366 P.3d 699 (2016)?
>
> (2) If the claim described in (1) is subject to a statute of limitations:
>
>     (a) Which limitations period applies?
>
>     (b) What causes the limitations period to begin to run?

*Id.* at 302.

The Supreme Court of Nevada held that such actions are not categorically exempt from statutes of limitation, that the four-year catch-all statute of limitations provided by NRS 11.220 applies, and that the statute of limitations does not begin to run until the titleholder affirmatively repudiates the lien. *Id.*

Specifically, the Supreme Court of Nevada held that the statute of limitations period in such an action "does not begin to run until the lienholder receives notice of some affirmative

**James C. Mahan
U.S. District Judge**

- 5 -

action by the titleholder to repudiate the lien or that is otherwise inconsistent with the lien's continued existence." *Id.* at 306. Additionally, the Supreme Court of Nevada held that "[t]he HOA foreclosure sale, standing alone, is not sufficient to trigger the period. . . . To rise to the level that would trigger the limitations period, something more is required." *Id.* at 306–07. "Something more" means "something closely analogous to 'notice of disturbed possession,' such as repudiation of the lien." *See id.* at 306.[4]

Here, SFR does not show that it affirmatively repudiated the lien or made any similar action that would provide notice to BANA of disturbed possession. SFR argues that its purchase at the foreclosure sale, its failure to tender timely installment payments on the lien, and its decision not to request information regarding loans when it could have under NRS 107.200 put BANA on notice that SFR repudiated the lien by June 1, 2014. This court disagrees.

As the Supreme Court of Nevada held in *Thunder Properties*, the *action* of purchasing the property at the foreclosure sale does not trigger the statute of limitations. 503 P.3d at 306–07. Following that holding, this court finds that SFR's *inaction* in not making installment payments or requesting loan information is not "something more" that would trigger the statute of limitations. Therefore, the statute of limitations for BANA's counterclaims began running when SFR filed this affirmative action against BANA in 2019. (*See* ECF No. 1). Thus, BANA's counterclaims and affirmative defenses are timely.[5]

---

[4] For example, "the period is triggered when "someone presses an adverse claim." *Thunder Properties*, 503 P.3d at 206. Pressing an adverse claim may consist of explicitly calling the owner's right to possession into question or indirectly challenging the owner's interest by asserting that another party has a senior interest." *Id.*

[5] Similarly, SFR's claims are also timely. BANA argues that the statute of limitations for SFR's claims began running when Jason Mattson called SFR the day after the foreclosure sale and "demanded that SFR rescind the sale" so that he could close on a proposed settlement with AMS for the purchase of the property. (*See* ECF No. 93 at 5). This court disagrees. Mattson's informing SFR of verbal assurances that AMS made to him regarding the property and his asking SFR to unwind its purchase neither "notice[d] [SFR] of disturbed possession" nor "press[ed] an adverse claim" that Mattson's clients may have had against SFR. By failing to show any other action Mattson or BANA took against SFR, BANA tacitly admits that no such claim was pressed. Just as BANA was "under no obligation to take further action to protect its deed of trust" against SFR after the sale, SFR was under no obligation to take further action to protect its interest against a former potential buyer with no actualized interest in the property. Thus, the statute of limitations for SFR's claims began running when BANA filed its counterclaims, and SFR's claims are timely.

Accordingly, this court denies SFR's motion to dismiss BANA's counterclaims and affirmative defenses. (ECF No. 70).

B. <u>SFR's motion for summary judgment is denied and BANA's motion is granted because BANA's obligation to tender was excused under Nevada's tender futility doctrine</u>

SFR and BANA cross-move for summary judgment on SFR's claims and BANA's counterclaims and affirmative defenses. (ECF Nos. 73; 74). SFR argues that it is entitled to summary judgment because the foreclosure sale extinguished all junior interests in the property, including BANA's deed of trust. (ECF No. 74 at 6). BANA argues that it is entitled to summary judgment because its interest is not extinguished due to Nevada's tender futility doctrine. (ECF Nos. 73; 75). This court agrees with BANA.

"[F]ormal tender is excused when evidence shows that the party entitled to payment had a known policy of rejecting such payments." *See 7510 Perla Del Mar Ave Trust v. Bank of America N.A.*, 458 P.3d 348, 349 (Nev. 2020) (hereinafter *Perla Trust*); *see also* 74 Am. Jur. 2d Tender § 4 (2012) ("A tender of an amount due is waived when the party entitled to payment, by declaration or by conduct, proclaims that, if tender of the amount due is made, it will not be accepted.").

Before the 2014 foreclosure sale, BANA diligently attempted to tender superpriority portions of the HOA's liens in almost 200 cases through its retained counsel, Miles, Bauer & Winters, LLP ("Miles Bauer"). (*See* ECF No. 73 at 3, 15–16); (*see also* ECF No. 73-27) (affidavit of Douglas Miles, managing partner at Miles Bauer). However, the HOA's collection agent, Assessment Management Services ("AMS"), had a policy of rejection at that time based on its incorrect position that the tenders included conditional "paid in full" language which required the payment of AMS's fees and costs to settle the liens. (*See* ECF No. 73-39) (affidavit of Rock Jung, former Miles Bauer attorney who worked on thousands of cases involving BANA's attempts to pay off superpriority liens, including cases involving AMS); *see also Horizons at Seven Hills v. Ikon Holdings*, 373 P.3d 66, 72 (Nev. 2016) (the superpriority lien "does not include an amount for collection fees and foreclosure costs incurred.").

The record clearly reflects AMS's policy and BANA's knowledge of this policy by the 2014 foreclosure sale.[6] On several occasions between 2011 and 2013, BANA—through Miles Bauer—corresponded with AMS regarding liens similar to the subject lien. In these interactions, BANA inquired with AMS the amount due on the lien for a property, AMS provided the appropriate information to calculate the superpriority lien, BANA tendered a check for that payment that did not include AMS's fees, and AMS rejected the payment attempts. (*See, e.g.*, ECF No. 73-28 at 27–39,[7] 44–56,[8] 62–73;[9] *see also id.* at 14–18[10]).

This court finds that the record contains no dispute that AMS had a known policy of rejection which invokes the tender futility doctrine and excuses formal tender.[11] SFR's argument regarding its status as a bona fide purchaser is no longer relevant due to this court's conclusion that the deed of trust survived under the futility doctrine. *See Perla Trust*, 458 P.3d 348.

---

[6] This court rejects SFR's challenges to the authenticity, foundation, and chain of custody of BANA's evidence of AMS's policy of rejection. (*See* ECF No. 78 at 7–8).

[7] (ECF No. 73-28 at 27) (Miles Bauer's May 7, 2012, letter to AMS offering payment on BANA's behalf for a lien on one "Danielson Avenue" property); (*id.* at 30) (AMS's response to Miles Bauer's May 7, 2012, letter providing an "account breakdown of what is owed" and explaining that the Danielson Avenue account remains on hold despite the offer of payment).

[8] (ECF No. 73-28 at 44) (Miles Bauer's November 1, 2012, letter to AMS offering a check on BANA's behalf to pay for a lien on one "Falling Tree Avenue" property); (*id.* at 56) (Miles Bauer's internal records providing that AMS returned the check for the Falling Tree Avenue property).

[9] (ECF No. 73-28 at 62) (Miles Bauer's December 29, 2011, letter to AMS regarding one "Circling Hawk Drive" property); (*id.* at 67) (AMS's response providing an account breakdown and explaining the account is on hold); (*id.* at 69) (Miles Bauer's January 19, 2012, letter to AMS including a check for the Circling Hawk Drive property); (*id.* at 73) (Mile Bauer's internal records providing that AMS returned the check).

[10] (ECF No. 73-28 at 14–15) (Miles Bauer's December 21, 2011, letter to AMS offering payment on BANA's behalf for the lien on one "Hilverson Avenue" property); (*id.* at 18) (Legal Wings's receipt for attempted delivery of Miles Bauer's letter providing that AMS "won't accept" delivery).

[11] SFR argues that *Perla Trust* imposes an element of intent to tender payment, but this court is unpersuaded. This court rejects SFR's argument upon review of the record; formal tender was excused due to futility.

James C. Mahan
U.S. District Judge

- 8 -

Accordingly, this court grants BANA's motion for summary judgment (ECF No. 73) and denies SFR's motion (ECF No. 74).  BANA is entitled to a declaration and judgment that its deed of trust survived the foreclosure sale.  All other claims are dismissed as moot.

## IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SFR's motion to dismiss BANA's counterclaims and affirmative defenses (ECF No. 70) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA's motion for summary judgment (ECF No. 73) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 74) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA's motion to strike (ECF No. 79) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA shall submit a proposed judgment consistent with the foregoing within fourteen (14) days of this order.

DATED August 10, 2022.

_____
UNITED STATES DISTRICT JUDGE